# CHARLESTON.

### CRAWFORD *et al* v. WHITTAKER.

Submitted June 11, 1896—Decided Nov. 25, 1896.

PRINCIPAL AND AGENT—COMMERCIAL LAW—TRAVELING SALESMEN—COLLECTIONS.

It is a well established rule of commercial law that traveling salesmen, merely taking orders for, but not delivering, goods, have no implied authority to receive payment or make collections. Nor can such salesmen abrogate this rule by falsely holding themselves out as members of the firm they represent. The person who deals with them on such false representations, and pays money to them by reason thereof, does so at his own risk and peril, and must bear the loss occasioned thereby.

THOMAS J. PEDDICORD and NEIL J. FORTNEY for plaintiffs in error, cited 88 Ill. 298; 39 Ohio St. 100; 24 Mich. 36; 68 Mo. 298; 55 Wis. 515; 34 N. Y. 417; 15 W. Va. 867, syl. pts. 3, 4.

D. M. WOTRING for defendant in error, cited 1 Am. & Eng. Enc. Law, 417, 418; 1 Wait, Act. & Def. 284, 286, 287; Sto. Cont. (4th Ed.) 216.

DENT, JUDGE:

Writ of error from the Circuit Court of Preston county.

Agreed statement of facts: "It is agreed by and between the parties to the above cause, through their counsel of record, that the said cause shall be submitted to the court for decision upon the following statement of facts: The goods charged in the plaintiffs' bill of particulars were sold to the

defendant by one Conroy, a traveling salesman of and for said firm of Crawford Bro's, a partnership, and not a member of the firm; that the bill filed in this cause is correct, that Conroy, as salesman for the plaintiffs, had no authority to collect money for the goods he sold; that the defendant, Whittaker, had previous notice from Crawford Bro's not to pay any money to salesmen; that the salesman, Conroy, represented himself to Whittaker that he (Conroy) was a member of the firm of Crawford Bro's; that the defendant, at the time of the purchase of the goods, believed that the said Conroy, from the statements made to him by said Conroy, was a member of said firm of Crawford Bro's, and when said bill fell due, amounting to one hundred and thirty dollars and seventy four cents, paid it to said Conroy, still believing, from representations made to him at the time by said Conroy, that he (said Conroy) was a member of said firm of Crawford Bro's; that said Crawford Bro's never ratified the act of Conroy in collecting said bill, or any part of it; and that the judgment from which this appeal was taken was for one hundred and thirty dollars and seventy four cents against the defendant, Whittaker, with interest thereon from the 23d day of January, 1895, and costs." Judgment was rendered for defendant. Plaintiffs obtained a writ of error.

The only question presented for consideration is, which of the parties must suffer by reason of the salesman Conroy's having falsely held himself out to be a member of the firm of Crawford Bro's? Defendant admits notice not to pay salesmen, but he excuses himself by saying that Conroy perpetrated a fraud upon him by misrepresenting his relation to the firm. It is well settled that, "where a person deals with an agent, it is his duty to ascertain the extent of the agency. He deals with him at his own risk. The law presumes him to know the limit of the agent's power; and, if the agent exceeds his authority, the contract will not bind the principal." *Curry* v. *Hall*, 15 W. Va. 867. "An agent employed to make sales, and selling on credit, is not authorized subsequently to collect the price in the name of the principal, and payment to him will not discharge the purchaser unless he can show some authori-

ty in the agent other than that necessarily implied in a mere power to make sales." *Law v. Stokes,* 32 N. J. Law, 250; *Seiple v. Irwin,* 30 Pa. St. 513; *Butler v. Dorman,* 30 Am. Rep. 795.

The burden of showing that a salesman not in possession of the goods had authority to receive payment therefor is on the purchaser or the party making payment. The defendant knew that Conroy was a salesman, and, as such, was without authority to receive payment; yet he accepts his misrepresentations as to being a member of the firm, although the style thereof was Crawford Bro's. This alone should have put him on inquiry as to the truth of the representations. There is nothing to show that Crawford Bro's were advised of, or had any knowledge of, these misrepresentations, or that they ratified them in any manner. They had taken sufficient steps for their own protection when they notified their customers not to make payments to salesmen; and they could not foresee or protect themselves against the false representations of their agents as to their relation to the firm. The name of the firm, together with the notice not to pay salesmen, was sufficient to put the purchaser on his guard and inquiry as to the truth of the representations of the salesman. Instead of making inquiry, he took the risk of the salesman's integrity, and must bear the loss which his false representations, clearly beyond the scope of his authority, have imposed. It would be a harsh rule, indeed, to require wholesale dealers to notify their customers that their traveling salesmen were not members of the firm, and for this reason not authorized to receive payment for goods sold. The presumption is that they are not members of the firm they represent as salesmen, in the face of notice not to pay salesmen; and the burden is on the person alleging to the contrary to show the relationship, and destroy this presumption, which can not be done by the mere declarations of the salesman made without the knowledge of the firm. It is an established rule of the mercantile law that a traveling salesman who is merely authorized to take orders for goods has no implied authority to receive payment or make collections. *Clark v. Smith,* 88 Ill. 298; 1 Am. & Eng. Enc. Law, 1036. To hold that such

salesmen can empower themselves to make such collections by merely falsely representing themselves to be members of the firm for which they are making sales is placing it within their power to entirely abrogate the rule, and destroy its efficacy. Wholesale merchants would be entirely at the mercy of their salesmen.

While it may bear severely on this defendant, we can not do otherwise than sustain a rule so well established. The judgment will therefore be reversed, and judgment entered for the plaintiff for debt, interest, and costs.